**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **OCCUPY NASHVILLE** (an unincorporated organization), PAULA ELAINE PAINTER, MALINA CHAVEZ SHANNON, LAUREN MARIE PLUMMER, ADAM KENNETH KNIGHT, WILLIAM W. HOWELL, DARRIA HUDSON & KATY SAVAGE , )))))))) | CIVIL ACTION NO. <u>3:11-cv-01037</u> |
| Plaintiffs, )) | **JURY DEMAND** |
| v. )) | **JUDGE ALETA TRAUGER** |
| WILLIAM EDWARD "BILL" **HASLAM**, GOVERNOR OF THE STATE OF TENNESSEE, WILLIAM L. GIBBONS COMMISSIONER OF THE TENNESSEE DEPARTMENT OF SAFETY, STEVEN G. CATES, COMMISSIONER OF THE TENNESSEE DEPARTMENT OF GENERAL SERVICES, and TENNESSEE HIGHWAY PATROL OFFICERS DOES 1-210, )))))))))))) | |
| Defendants. | |

## <u>FIRST AMENDED COMPLAINT</u>

Plaintiffs, through their undersigned attorneys, state for their First Amended Complaint as follows:

## <u>INTRODUCTION</u>

1.      This is an action pursuant to 42 U.S.C. § 1983 for declaratory and injunctive relief and monetary damages to redress an unconstitutional denial of the Plaintiffs' right of free speech, expression and assembly guaranteed by the First and Fourteenth Amendments to the Constitution of the United States and Article 1, § 19 and § 23 of the Constitution of the State of Tennessee.

{CDB0003.4}

## <u>PARTIES</u>

2.     Plaintiff Occupy Nashville is an unincorporated organization that seeks to bring attention to the imbalance in our financial and economic system, to ensure that elected leaders are as concerned about and responsive to citizens of our country without means or with moderate means as they are to those with the most and to eliminate the excessive, unwarranted influence of money and corporations in political decision making.  It maintains a website to view its live-streaming activities at: http://occupynashville.org/streaming-video/  It communicates with its members and the public through http://www.facebook.com/OccupyNashville and http://twitter.com/#!/OccupyNashville.

3.     Plaintiff Paula Elaine Painter, 55, is a citizen of the United States of America and resident of the State of Tennessee who was unlawfully arrested at Legislative Plaza in Nashville, Tennessee, in the early morning of October 28, 2011, and then again early in the morning of October 29, 2011.  Ms. Painter has been as a librarian for more than twenty (20) years during her professional career.  After recently  losing her job as a librarian, she has been taking care of her elderly father.

4.     Plaintiff Malina Chavez Shannon, 34, is a citizen of the United States of America and resident of the State of Tennessee and a college student.   She also is training as a photographer.   In the early morning of October 29, 2011, Ms. Shannon was travelling to Legislative Plaza on foot after parking her car.  Before she reached the plaza, while she was on the sidewalk, she was detained and arrested by members of the Tennessee Highway Patrol ("THP").  She was handcuffed by one of the unnamed members of the THP so tightly that a nurse at the Metro jail had to cut the handcuffs off her with surgical scissors.  Days after her arrest she still has numbness in one of her hands from being handcuffed.  Additionally, her photographic equipment was damaged by the Highway Patrol in the course of her arrest.

5.     Plaintiff Lauren Marie Plummer, 24, is a citizen of the United States of America and resident of the State of Tennessee  and an early childhood educator who lives in Nashville. She has participated as a member of Occupy Nashville since October 7, 2011.  She was arrested on both October 28 and 29, 2011.   Ms. Plummer has occupied Legislative Plaza for approximately six (6) nights prior to her arrests.  Ms. Plummer participated in other acts of public protest in the past, including protesting the lack of low income housing and the conditions at Nashville's tent city.

6.     Plaintiff Adam Kenneth Knight is a citizen of the United States of America and resident of the State of Tennessee.  Mr. Knight is an eighth grade teacher at a middle school in the Nashville area.   He was arrested with other peacefully protesting citizens on the early morning of October 28, 2011.  The night before his arrest one of Mr. Knight's students attended the Occupy Nashville protest with his father.  When it became clear that arrests would take place, the father thanked Mr. Knight for teaching his son to stand up for what is right.

7.     Plaintiff William W. Howell, 64, is a citizen of the United States of America and resident of the State of Tennessee.  Mr. Howell is a long time advocate for fair taxation at the State Legislature.  His involvement in public protests of the action of his elected representatives dates back to the Vietnam War.  After being warned by the State to leave Legislative Plaza on the morning of October 28, 2011, Mr. Howell read the Declaration of Independence for all to hear. The Tennessee Highway Patrol waited for him to finish its reading; then, ignoring the import of what had been read, arrested Mr. Howell along with 28 other peaceful protesters.

8.     Plaintiff Darria Janéy Hudson is a citizen of the United States of America and resident of the State of Tennessee and a 23-year-old candidate for Masters of Divinity at Vanderbilt University, a part-time employee of Vanderbilt Sarratt Center, a licensed minister at

{CDB0003.4}

the Metropolitan interdenominational church and a former student minister at Fisk University. She was arrested in the early morning hours of October 28, 2011. Ms. Hudson has studied with James Morris Lawson, Jr.**,** a leading theoretician and tactician of nonviolence within the American Civil Rights Movement. She believes that Occupy Nashville is a continuation of civil disobedience seeking social justice dating back to the sit-ins in Nashville in 1960.

9. Plaintiffs Hudson, Howell, Knight, Plummer, Shannon and Painter are collectively referred to herein as the "Arrested Plaintiffs."

10. Plaintiff Katy Savage is a citizen of the United States of America and resident of the State of Tennessee. Ms. Savage has a B.A. in English and Philosophy and an M.A. in Environmental Humanities. She attended the first Occupy Nashville rally on October 6, 2011, and began sleeping there October 12. She has spent around 10 - 15 nights there. She works with the Facilitation Committee of Occupy Nashville to create a process for meetings that is fair and democratic, and according to the ideals of consensus. On the first night of arrests, she was intending to stay on the Plaza, but left when the State Troopers arrived and gave a ten-minute warning. She was not arrested at the Plaza either night but curtailed her speech and political activities at the Plaza out of fear of being arrested by the State Troopers.

11. Plaintiff Savage is referred to herein as the "Non-Arrested Plaintiff."

12. Defendant William Edward "Bill" Haslam ("Haslam") is the Governor of the State of Tennessee. He is sued in his official capacity.

13. Defendant Steven G. Cates ("Cates") is the Commissioner of the Department of General Services for the State of Tennessee. He is sued in his official and individual capacities.

14.     Defendant William L. Gibbons ("Gibbons") is the Commissioner of the Department of Safety for the State of Tennessee.  He is sued in his official and individual capacities.

15.     Defendant Tennessee Highway Patrol Officer Does 1-100 ("Officer Does 100") are officers with the Tennessee Highway Patrol.  The names of Officer Does 1-100 are not known at this time; however, they are sued in their official and individual capacities.  Officer Does 1-100 arrested the Arrested Plaintiffs on October 28, 2011, without probable cause or reasonable suspicion that a crime had been committed.

16.     Defendant Tennessee Highway Patrol Officer Does 101-110 ("Officer Does 101-110") are officers with the Tennessee Highway Patrol.  The names of Officer Does 101-110 are not known at this time; however, they are sued in their official and individual capacities.  Officer Does 101-110 detained the Arrested Plaintiffs on October 28, 2011, for several hours without probable cause or reasonable suspicion that a crime had been committed even after the Davidson County Magistrate had ordered the Arrested Plaintiffs released.

17.     Defendant Tennessee Highway Patrol Officer Does 111-210 ("Officer Does 111-210") are officers with the Tennessee Highway Patrol.  The names of Officer Does 111-210 are not known at this time, however they are sued in their official and individual capacities.  Officer Does 111-210 arrested the Arrested Plaintiffs on October 29, 2011, without probable cause or reasonable suspicion that a crime had been committed.

18.     Defendants, at all relevant times and as to all relevant actions described herein, were acting under the color of state law.

## JURISDICTION AND VENUE

19.     This suit is for injunctive relief, declaratory relief, nominal and actual damages. The causes of action for injunctive relief, nominal and actual damages are provided by 42 U.S.C.

§ 1983, which permits actions at law and suits in equity against any person, who under color of a state law, causes injury to another in violation of the Constitution of the United States. The cause of action for declaratory relief arises under 28 U.S.C. § 2201, which permits a court to declare the rights of any interested party in a case of actual controversy.

20.     This suit presents questions that arise under the Constitution of the United States. Accordingly, jurisdiction is provided by 28 U.S.C. §§ 1331, 1343(a)(3), and 2201.

21.     Venue is proper in the Court under 28 U.S.C. § 1391, as Defendants may be found in this district.

## CLASS ACTION ALLEGATIONS

22.     The individual Plaintiffs bring this action individually and as a class action for damages pursuant to Federal Rule of Civil Procedure 23, on behalf of all holders of individuals arrested on October 28 and 29, 2011, at Legislative Plaza pursuant to the New Rules.

23.     This action is properly maintainable as a class action.

24.     The Class is so numerous that joinder of all members is impracticable. At least 49 individuals were arrested on the nights in question.

25.     Questions of law and fact exist that are common to the Class, including, among others:

(a)     The arrests were in violation of the United States Constitution;

(b)     whether the Defendants were acting under the color of state law;

(c)     whether the defense of qualified immunity is available to the Defendants; and

(d)     whether Plaintiffs were damaged by the conduct of the Defendants.

26. Plaintiffs are committed to prosecuting this action and have retained competent counsel experienced in litigation of this nature. Accordingly, individual Plaintiffs are adequate representatives of the Class and will fairly and adequately protect the interests of the Class.

27. Individual Plaintiffs' claims are typical of the claims of the other members of the Class and individual Plaintiffs have the same interests as the other members of the Class.

28. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

## FACTUAL ALLEGATIONS
### THE PROTEST

29. Occupy Nashville is an outgrowth of the "Occupy Wall Street" movement that began approximately one and a half months ago. The Occupy Nashville movement seeks to bring attention to the imbalance in our financial system and to ensure that politicians are as concerned about and responsive to citizens of our country without means or with moderate means as they are to corporations and those who benefit the most from the current imbalance.

30. Legislative Plaza ("Plaza") is located between Union Street and Charlotte Pike, facing 6th Avenue North in front of War Memorial Auditorium in Nashville, Tennessee, directly across the street from the Statehouse. The location of the Plaza makes it an appropriate and effective public forum at which Occupy Nashville can convey its message, meet in a peaceable manner for their common good, instruct their representatives and apply to those invested with the powers of government for redress of their grievances.

31.     The Plaza was first know as War Memorial Square.



It was completed in 1925. The building was recognized with a Gold Medal Award by the American Institute of Architecture (AIA) in 1925, the highest honor that the AIA can bestow.

32.     The design of the Plaza has changed much since 1925 to accommodate larger crowds and more frequent public events.



33.     The Plaza is large open pedestrian space.  The War Memorial Amphitheatre is entered by steps leading off of the Plaza.  These steps are used as part of many public gatherings.

34.     For many years, the Plaza has been used for political, social and labor demonstrations. Often it is used for the overflow of demonstrations directly in front of the State Capitol. It is also used by demonstrators who simply wish to be visible across the street from the State Capitol rather than directly on its doorstep.  It is routinely used for the inauguration of the Governor.

35.     On April 26, 2008, a local group held a demonstration on the Plaza. Prior to their demonstration, this group was informed by the State that there was no permit requirement, and no rules or regulations governing the use of the Plaza.   Specifically on March 4, 2008, the State informed them, "any person or organization is free to engage in any activity protected by the Constitution on the War Memorial Plaza without having to provide the State of Tennessee advance notice, obtain liability insurance or pay event and security fees."  (See, Exhibit 1, "March 4, 2008, Letter" )

36.     Occupy Nashville began its speech activities at the plaza on October 9, 2011.  The groups in the "Occupy" movement typically encompass a continuous presence at a location. Occupy Nashville participants are not normally sleeping at the Plaza but, rather, maintain a continuous around-the-clock presence by rotating participants.  At any one time, there have been as few as two (2) participants or as many as three hundred (300) participants.  Occupy Nashville participants have mainly located themselves and their property right near the northwest corner of the Plaza, on a seating section of the stepped-seating, or at a section of one of the ledges. Participants positioned themselves and their property so as not to obstruct other pedestrians' usage of or passage through the Plaza.

37.     Some Occupy Nashville participants brought with them coolers of food, drinks or medical supplies for use if needed during their speech activities.   They also brought political

signs. Some had small tents. They brought tarps to cover items when it began raining. A few brought small collapsible chairs to sit in or small single-person tables upon which to place their computer to engage in real-time live chat from the "occupation" site. Again, given the size of the Plaza and of the pedestrian walkways, none of the activities engaged in by Occupy Nashville, even at their peak of participation, obstructed the use of the Plaza by other persons.

38. Recently, the Southern Festival of Books and Occupy Nashville used the Plaza at the same time without incident or complication.

## New Rules Are Promulgated by Fiat of the Commissioner

39. Pursuant to the act of the General Assembly, the Tennessee Department of General Services is authorized and obligated by statute to make rules for the use of the Plaza. Tenn. Code Ann. §§ 4-3-1105, 4-4-103; 4-8-101, 103 & 104, 4-3-1103 &1105 and 4-3-2206.

40. Prior to Occupy Nashville's protest commencing at Legislative Plaza, the Department of General Services had adopted a set of limitations on the Plaza's use. (Exhibit 2) (the "Old Rules"). It is unknown when or how these Old Rules were adopted; however, it is clear that they placed no limitation on the hours of use and had been interpreted by the State to allow non-exclusive use of the Plaza without seeking a permit. (March 8, 2008, Letter)

41. On October 27, 2011, the Old Rules were amended by fiat without notice, comment or approval by the Attorney General and Reporter or publication by the Secretary of State. (the New Rules, Exhibit 3). These New Rules, which purport to be of immediate applicability, were posted on the Plaza in the afternoon of October 27, 2011. These new rules were then enforced on October 28, 2011. No emergency requiring the promulgation of new rules existed.

42.     These New Rules unconstitutionally limit access by the public to a forum universally accepted to be an area protected for the speech of the governed.

### First Night of Arrests

43.     Despite receiving notification of the New Rules, Occupy Nashville protesters, relying on historic policy of the Plaza, continued their occupation of the Plaza.

44.     On Friday, October 28, 2011, at approximately 3:00 a.m., the Occupy Nashville protesters were told by the Tennessee Highway Patrol that they had ten (10) minutes to leave the Plaza. While some protesters left the Plaza, many did not leave and instead sat in the middle of the Plaza, peacefully singing and listening to a recitation of the Declaration of Independence.

45.     Just as the warning time had run out, approximately 75 THP officers converged on the Plaza. The State Troopers arrested the remaining protesters, bound their hands with "zip ties," and loaded them onto a waiting prison bus, which took them to jail.



{CDB0003.4}

46.     All of the Arrested Plaintiffs' seized items were placed into a truck and were driven away.  Upon information and belief, the property was placed into the possession of the State Police.

47.     The Non-Arrested Plaintiff fled the Plaza under the threat of arrest, stopped engaging in the political speech in which they had been engaged in which they intended to continue.  The continued enforcement of the New Rules will materially limit their ability to seek redress from their government, express their political views and peacefully assemble.  The Non-Arrested Plaintiff intends to continue to seek redress from their government, express their political views and peacefully assemble at the Plaza.

## Criminal Proceedings

48.     Upon arrival at the Davidson County Sheriff's Criminal Justice Center, Officers Does 1-100 sought to have their actions ratified by a Judicial Commissioner as required by state law.  The Commissioner denied the request, refusing to find probable cause and effectively ordering the protesters' release.

49.     Despite this ruling, however, Defendant Officers Does 101-110 continued to detain Plaintiffs until approximately 8:45 a.m., approximately five (5) hours after Commissioner Nelson's Order finding no probable cause and ordering their release.  The Arrested Plaintiffs' release occurred only after Defendant Officers Does 101-110 issued citations to appear in General Sessions Court to address the same charges for which the Judicial Commissioner had just refused to issue an arrest warrant.

50.     These illegal citations were dismissed and expunged by the General Sessions Court on Monday, November 14, 2011.

## Seizure of Their Property

51.    Plaintiffs' counsel was informed by Defendants' counsel (General Counsel of the Department of General Services) that Arrested Plaintiffs would need to obtain their own truck to carry items seized by THP and that these items were stored in a dry garbage bin in the Plaza garage.

52.    Plaintiffs' counsel has been advised by an official in charge of the Plaza that some of the property has been destroyed.

## Second Night of Arrests

53.    On Friday, October 28, 2011, the Arrested Plaintiffs were again threatened with arrest, even though the Defendants knew that the arrests were illegal.  At least one (1) Tennessee State Trooper suggested that the Defendants consult with the Tennessee Attorney General and Reporter prior to the second night of arrests.

54.    Plaintiff Malina Chavez Shannon was not part of the protest, but was taking photographs on the sidewalk.  She was arrested while on the sidewalk abutting 6th Avenue.

55.    In an overwhelming show of force, on October 28, 2011, shortly before midnight, more than two dozen peacefully assembled Occupy Nashville protestors were arrested by 72 Tennessee Highway Patrol Officers, including the Arrested Plaintiffs identified above.  The arrestees also included a reporter with the *Nashville Scene,* Jonathan Meador, who was covering the event.

56.    Again the Non-Arrested Plaintiff fled the Plaza under the threat of arrest, stopped engaging in the political speech in which she had been engaged in which she intended to continue.  The continued enforcement of the New Rules will materially limit her ability to seek redress from her government, express her political views and peacefully assemble.  The Non-

Arrested Plaintiff intends to continue to seek redress from her government, express her political views and peacefully assemble at the Plaza.



### **Illegal Surveillance**

57.     The Defendants conspired to infiltrate, observe, record, and disseminate false information gathered on lawful speech activities the Plaintiffs.

58.     Specifically, the Defendants attempted to access the chat room of Occupy Nashville utilizing a false username and password, used undercover Troopers to observe and monitor the activities of the Plaintiffs, and stated falsely that Occupy Nashville and its members were engaged in illegal and unsafe conduct.

59.     Defendants had no reasonable suspicion that criminal conduct was ongoing at Legislative Plaza when they infiltrated, observed and recorded Occupy Nashville, and then made false statements about the conduct of the Plaintiffs.

## Future Plans

60.     Plaintiffs (both Arrested and Non-Arrested) continue to use the Plaza for their free speech activities, albeit they have been hindered (including in the conveyance of their message) by the restrictions placed upon them.  Plaintiffs intend to continue to engage in free speech activities at the Plaza (and to generally enjoy the use of the Plaza) now and in the future for an indefinite period of time.  They wish to do so without being subjected to the invalid, unlawful prohibitions and restrictions imposed upon them by Defendants Haslam, Cates and Gibbons.

## Reckless and/or Callous Indifference to Plaintiffs' Federally Protected First Amendment Rights

61.     In enacting the New Rules, retaliating against, infiltrating, detaining without probable cause and generally harassing the Plaintiffs, Defendants acted with a with reckless and/or callous indifference to the federally protected rights of the Plaintiffs.

62.     Specifically, the Defendants:

a)      enacted the New Rules directed specifically at the speech of the Plaintiffs;

b)      enacted the New Rules that ignored all legal precedent on the First Amendment without public hearing or comment;

c)      enacted the New Rules without consolation with the Attorney General and Reporter;

d)      deceived the Plaintiffs about their intent to enforce the regulations;

e)      infiltrated, observed and monitored the Plaintiffs, even though the Defendants had no reasonable suspicion that a crime had been committed.

f)      knew or should have (and easily could have) known that the New Rules exceeded their ability to regulate speech at the Plaza.

## COUNT I
### VIOLATION OF THE FIRST AMENDMENT RIGHTS TO FREE SPEECH & ASSEMBLY
### (42 U.S.C. § 1983) NEW POLICY IS UNCONSTITUTIONAL ON ITS FACE

63.     Plaintiffs re-allege and re-aver all of the allegations contained in the previous paragraphs.

64.     Plaintiffs' past and proposed activity constitutes political speech and association in a public forum and, therefore, is expressive activity entitled to the highest degree of protection under the First Amendment.

65.     The State's New Rules violate Occupy Nashville's and the individual Plaintiffs' First Amendment rights in the following ways:

a.     They constitute an impermissible prior restraint on Occupy Nashville's speech.

b.     They constitute a content-based regulation of Occupy Nashville's speech.

c.     They embody the exercise of excessive and unfettered arbitrary discretion, ungoverned by objective standards, by the officers, employees or agents of the state who are charged with reviewing Occupy Nashville's request to hold its march.

d.     They constitute an arbitrary and standard-less tax or financial burden on plaintiffs' speech, and impose arbitrary requirements on Occupy Nashville's attempt to exercise its expressive rights.

e.     They are unconstitutionally vague.

f.     They are unconstitutionally overbroad.

g.     They discriminate against Occupy Nashville in that they chill or eviscerate Occupy Nashville's First Amendment rights on the basis of its financial status and its inability to pay the fees imposed by the state on expressive activity in public forums.

66.     As a proximate result of the Defendants' actions, the Plaintiffs have been deprived of their rights under the First Amendment and have suffered immediate and irreparable harm.

67.     Defendants Haslam, Cates and Gibbons acted under color of state law when they enacted and continue to enforce the above-described New Rules that abridge Plaintiffs' rights to

freedom of speech, expression and association as guaranteed by the First and Fourteenth Amendments to the Constitution of the United States, which are enforceable pursuant to 42 U.S.C. § 1983.

68.     As a result of Defendants' enforcement of the New Rules, the Plaintiffs have been limited in the ability to exercise their First Amendment rights and have significant fear of arrest for exercising these same rights in the future.

## COUNT II
### VIOLATION OF THE FIRST AMENDMENT RIGHTS TO FREE SPEECH & ASSEMBLY (42 U.S.C. § 1983)  NEW POLICY IS UNCONSTITUTIONAL AS APPLIED

69.     Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs in this Complaint.

70.     Defendants have, as made clear by their public statements, adopted these New Rules in reaction to Occupy Nashville's protest.

71.     Defendants have also enforced the New Rules selectively, allowing those who they did not believe to be part of Occupy Nashville to utilize the Plaza after the fiat-imposed curfew, even while they arrested the members of Occupy Nashville.

72.     As a result of Defendants' enforcement of the New Rules, the Plaintiffs have been limited in their ability to exercise their First Amendment Rights.

## COUNT III
### ARTICLE I, SECTION 19 OF THE TENNESSEE CONSTITUTION

73.     Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs in this Complaint.

74.     Article I, Section 19 of the Tennessee Constitution provides:

That the printing press shall be free to every person to examine the proceedings of the Legislature; or of any branch or officer of the government, and no law shall ever be made to restrain the rights thereof.  The free communication of thoughts

and opinions, is one of the invaluable rights of man and every citizen may freely speak, write, and print on any subject, being responsible for the abuse of that liberty…

75.    Plaintiffs' right to freedom of speech and expression, guaranteed by the Article 1 Section 19 of the Tennessee Constitution, continue to be violated by the New Rules. Defendants cannot establish a justification sufficient to regulate Plaintiffs' speech, nor are the New Rules narrowly tailored to serve any such justification advanced by Defendants.

76.    Defendants acted under color of state law when they enacted and continue to enforce the above-described rule that abridges Plaintiffs' rights to freedom of speech and expression as guaranteed by Article 1, Section 19 of the Tennessee Constitution.

77.    As a result of Defendants' enforcement of the New Rules, the Plaintiffs have been limited in their ability to exercise their rights under the Tennessee Constitution.

## COUNT IV
### ARTICLE I, SECTION 23 OF THE TENNESSEE CONSTITUTION

78.    Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs in this complaint.

79.    Article I, Section 23 of the Tennessee Constitution provides:

That the citizens have a right, in a peaceable manner, to assemble together for their common good, to instruct their representatives, and to apply to those invested with the powers of government for redress of grievances, or other proper purposes, by address or remonstrance.

80.    Plaintiffs' right to freedom of assembly, guaranteed by the Article 1 Section 23 of the Tennessee Constitution continue to be violated by the New Rules. Defendants cannot establish a justification sufficient to regulate Plaintiffs' assembly, nor are the New Rules narrowly tailored to serve any such justification advanced by Defendants.

81.     Defendants acted under color of state law when they enacted and continue to enforce the above-described rule that abridges Plaintiffs' rights to freedom of assembly as guaranteed by Article 1, Section 23 of the Tennessee Constitution.

82.     As a result of Defendants' enforcement of the New Rules, the Plaintiffs have been limited in their ability to exercise their rights under the Tennessee Constitution.

### COUNT V
### VIOLATION OF DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT
### (42 U.S.C. § 1983) PROCEDURAL DUE PROCESS

83.     Plaintiffs repeat and re-allege  the preceding paragraphs as if fully set forth herein.

84.     By imposing invalid restrictions upon Plaintiffs, thereby infringing upon Plaintiffs' enjoyment of  a public forum, i.e. Legislative Plaza, Defendants have violated Plaintiffs' right to Due Process as guaranteed by Fourteenth Amendment of the United States Constitution, which are enforceable pursuant to 42 U.S.C. § 1983.

85.     As a result of the described actions by Defendants, Plaintiffs have suffered and are continuing to suffer from irreparable harm and other damages.

### COUNT VI
### VIOLATION OF THE TENNESSEE UNIFORM PROCEDURES ACT

86.     Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs in this Complaint.

87.     The Tennessee Department of General Services is an "agency" as defined by the Uniform Administrative Procedures Act ("UAPA").  See Tenn. Code Ann. § 4-5-102(2).

88.     Although the Tennessee Department of General Services characterized these rules (both Old and New) as policies, they, in fact, constitute rules under the UAPA.  A "policy" means a set of decisions, procedures and practices pertaining to the internal operation or actions of an agency.  Tenn. Code Ann. § 4-5-102(12) (emphasis added).  "Rule" means each agency

statement of general applicability that implements or prescribes law or policy or describes the procedures or practice requirements of any agency. "Rule" includes the amendment or repeal of a prior rule. Tenn. Code Ann. § 4-5-102(12).

89.     The Department of General Services did not comply with the notice and hearing or any other requirement of the UAPA in issuing the New Rules.

90.     State policies that are not promulgated in compliance with the UAPA are void. See Tenn. Code Ann. § 4-5-216

91.     The New Rules are void *ab inicio.*

92.     As a result of the described actions by Defendants, Plaintiffs have suffered and are continuing to suffer from irreparable harm and other damages.

<u>COUNT VII</u>
<u>UNLAWFUL SEARCH AND SEIZURE OF PERSONAL PROPERTY</u>

93.     Plaintiffs repeat and re-alleges the preceding paragraphs as if fully set forth herein.

94.     By seizing Arrested Plaintiffs' property without a search warrant or other authority rendering such seizure reasonable, Defendants violated Arrested Plaintiffs' right to be free from unlawful searches and seizures of personal property, as guaranteed by the Fourth Amendment and Article I, Section 8 of the Tennessee Constitution.

95.     As a result of the described actions by Defendants, Arrested Plaintiffs have suffered and are continuing to suffer from irreparable harm and other damages.

## COUNT VIII
### UNLAWFUL ARREST (42 U.S.C. § 1983)

96.     Plaintiffs repeat and re-allege the preceding paragraphs as if fully set forth herein.

97.     At the time, one or more of the Defendant Officer Does 1-100 and Defendants Gibbons and Cates, acting in concert with each, took the individual Arrested Plaintiffs into custody on October 28, 2011, there was no warrant for the Arrested Plaintiffs' arrest. Furthermore, Defendant Officer Does 1-100 and Defendants Gibbons and Cates officers had no probable cause to arrest the Arrested Plaintiffs.

98.     At the time, one or more of the Defendant Officer Does 101-110 and Defendants Gibbons and Cates, acting in concert with each, detained the Arrested Plaintiffs after the Judicial Commissioner had ordered their release. During this time of detention, Defendant Officer Does 101-110 and Defendants Gibbons and Cates officers had no probable cause to arrest the Arrested Plaintiffs.

99.     At the time, one or more of the Defendant Officer Does 111-210 and Defendants Gibbons and Cates, acting in concert with each, took the individual Arrested Plaintiffs into custody on October 29, 2011, there was no warrant for the Arrested Plaintiffs' arrest. Furthermore, Defendant Officer Does 111-210 and Defendants Gibbons and Cates officers had no probable cause to arrest the Arrested Plaintiffs.

100.    At the time, one or more of the Defendant Officer Does 1-210  and Defendants Gibbons and Cates, acting in concert with each other, seized Arrested Plaintiffs, they did not have reasonable suspicion that a crime had or would occur.

101.    As a result of Defendants' concerted and malicious false arrest and illegal detention of the individual Arrested Plaintiffs, Defendants, intentionally and with deliberate indifference to Arrested Plaintiffs' constitutional rights, deprived the individual Arrested

Plaintiffs of their liberty without due process of law and deprived them of equal protection under the laws, in violation of the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution which are enforceable pursuant to 42 U.S.C. § 1983.

102.    As a result of the described actions by Defendants, Arrested Plaintiffs have suffered and are continuing to suffer from irreparable harm and other damages.

## COUNT IX
### RETALIATION FOR EXERCISING
### FIRST AMENDMENT RIGHTS  (42 U.S.C. § 1983)

103.    Plaintiffs repeat and re-allege the preceding paragraphs as if fully set forth herein.

104.    Defendants enacted the New Rules in retaliation as a direct result of the nature and content of the Plaintiffs' speech.  Defendants further arrested and detained Plaintiffs in retaliation as a direct result of the nature and content of the Plaintiffs' speech.

105.    As a result of Defendants' retaliatory adoption of the New Rules, Plaintiffs were deprived of  their liberty without due process of law and deprived them of equal protection under the laws, in violation of the First, Fourth, Fifth, and Fourteenth amendments of the United States Constitution which are enforceable pursuant to 42 U.S.C. § 1983.

106.    As a result of the described actions by Defendants, Plaintiffs have suffered and are continuing to suffer from irreparable harm and other damages.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request judgment against the Defendants as follows:

Against Defendants Haslam, Cates and Gibbons:

(1)    Declaratory relief, including, but not limited to, a declaration that the restrictions and prohibitions contained in the New Rules are invalid and are unenforceable;

(2)    Temporary Restraining Order – Ordering the Defendants to cease enforcing the New Rules pending the Outcome of this matter;

(3)     Return of all seized items;

(4)     A preliminary and then permanent injunction prohibiting the Defendants from enforcing the New Rules;

Against Defendant Cates and Gibbons:

(5)     Monetary damages for infringement of the Plaintiffs First Amendment rights, as well as their unlawful arrest and detention and retaliation for exercise of the Plaintiffs First Amendment Rights;

(6)     Punitive damages for adopting the New Rules with reckless and/or callous indifference to the federally protected rights of the Plaintiffs;

Against all Trooper Defendants:

(7)     Monetary damages for unlawful arrest and detention of the individual Arrested Plaintiffs;

Against all Defendants:

(8)     Declaring that this action is properly maintainable as a Class action and certifying Plaintiffs as Class representatives;

(9)     Attorney's fees and costs associated with this action, pursuant to § 1988 *et seq.* and other relevant authority;

(10)    Any further relief as this Court deems just and proper and any other relief as allowed by law.

## DEMAND JURY

Plaintiffs demand trial by jury of 12 in this action.

Respectfully submitted,


/s/ C. David Briley
C. David Briley, No. 018559
Bone McAllester Norton PLLC
511 Union Street, Suite 1600
Nashville, TN 37219
Telephone: (615) 238.6392
Facsimile: (615) 238.6301
dbriley@bonelaw.com
ACLU-TN Cooperating Attorney

/s/ Patrick G. Frogge
Patrick Garland Frogge, No. 020763
Bell Tennent & Frogge PLLC
414 Union St Ste 904
Nashville, TN 37219
Phone: 615-244-1110
Fax: 615-244-1114
patrick@btflaw.com
ACLU-TN Cooperating Attorney


/s/ Tricia R. Herzfeld
Tricia Ruth Herzfeld, No. 026014
ACLU TN
PO Box 120160
Nashville, TN 37212
Phone: 615-320-7142
tricia@aclu-tn.org

*ATTORNEYS FOR PLAINTIFFS*


## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2012, a true and exact copy of the foregoing has been served via electronic mail, through the Court's electronic filing system, to:

OFFICE OF THE TENNESSEE ATTORNEY GENERAL AND REPORTER:

William J. Marett, Jr., Senior Counsel
CIVIL LITIGATION AND STATE SERVICES DIVISION

Dawn M. Jordan, Senior Counsel
CIVIL RIGHTS AND CLAIMS DIVISION

425 5th Avenue North
P.O. Box 20207
Nashville, TN 37202
Phone: (615) 741-7087 Marett
Phone: (615) 741-6440 Jordan
Fax: (615) 741-7327
bill.marett@ag.tn.gov
dawn.jordan@ag.tn.gov


/s/ C. David Briley